UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ISAIAH MARIN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24-cv-00901-JAR |
| | ) |
| TVS SUPPLY CHAIN SOLUTIONS | ) |
| NORTH AMERICA, INC., et al., | ) |
| | ) |
|    Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion to Dismiss filed by Defendants TVS Supply Chain Solutions North America, Inc. ("TVS"), Robert Riordan, Levi Mansfield, Diane Francis, and David Black (collectively, the "Defendants"). ECF No. 18. Plaintiff filed his Response. ECF No. 20. Defendants filed their Reply. ECF No. 21. This matter is now fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant Defendants' Motion and dismiss this case without prejudice.

## Background

Relevant Facts

On June 28, 2024, Plaintiff filed this pro se employment discrimination action against Defendants. In his Complaint, Plaintiff raises claims of employment discrimination under Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff alleges religious discrimination, harassment/hostile work environment, and retaliation claims all related to his termination and the incidents leading up to his termination.

Plaintiff specifically alleges that upon arriving to work at 10:30 p.m. on July 31, 2023, he attended a meeting at which his co-worker, Joe Kukan, was wearing a t-shirt displaying a large,

inverted crucifix. Plaintiff, a Christian, reported to Rodney Vardimon, a departmental manager, that the t-shirt was offensive to his Christian faith. Mr. Vardimon brought Plaintiff's report to Defendant Levi Mansfield, an operations manager, who ordered Mr. Kukan to zip up his reflective safety vest to cover the t-shirt. Plaintiff alleges that Defendant Mansfield failed to write a Corrective Action against Mr. Kukan, which Plaintiff claims is a violation of Article 2, Section 2 of the Collective Bargaining Agreement between TVS and the UAW (the "CBA"), which prohibits religious discrimination by TVS, the UAW, or TVS employees. ECF No. 1-4 at 7.

Plaintiff alleges that during the same work shift at approximately 12:00 a.m. on August 1, 2023, another one of Plaintiff's co-workers, Kimberly Brooks,[1] drove past Plaintiff on a forklift and yelled "freedom of speech." Plaintiff alleges that he then drove his forklift next to Ms. Brooks to ask what she had said. In response, Ms. Brooks responded with "I said: 'Freedom of Speech!'" When Plaintiff asked Ms. Brooks what she was talking about, Ms. Brooks explained that the t-shirt that Mr. Kukan was wearing was an expression of free speech. In response, Plaintiff stated that the inverted cross on Kukan's t-shirt was discriminatory, and that discrimination is not part of free speech. Plaintiff subsequently informed Ms. Brooks that he was going to report her for harassment. As Plaintiff drove away, Ms. Brooks allegedly followed Plaintiff and repeatedly yelled "freedom of speech!" Plaintiff reported Ms. Brooks to Mr. Vardimon and wrote a statement for Human Resources alleging that Ms. Brooks harassed him and discriminated against him in violation of the CBA.

Plaintiff was later summoned to the office of TVS's senior human resources business partner, Defendant Robert "Bob" Riordan. In this meeting, Mr. Riordan suspended Plaintiff

---

[1] Plaintiff repeatedly refers to Ms. Brooks as a Defendant, though he has not named Ms. Brooks as a Defendant in this action.

from his employment based on several witness statements, discussed below, that claimed that Plaintiff had confronted Mr. Kukan in a threatening manner. Mr. Riordan also ordered Plaintiff to participate in an investigatory interview over the phone at 6:30 am on August 2, 2023.

Plaintiff attached several witness statements to his Complaint.[2] One of these statements, written by Ms. Brooks, explained the exchange between her and Plaintiff about freedom of speech already noted above. ECF No. 1-4 at 3-4. A second witness statement written by Edwin Isaacson explains that on July 30, 2023,[3] after Plaintiff had already reported Mr. Kukan's shirt to management, he accosted Mr. Kukan and told him to "[m]eet me outside. I'm that kind of a guy." ECF No. 1-4 at 5. The statement goes on to say that Plaintiff later came back and confronted Mr. Kukan again to call him "a bitch in prison." *Id.* Mr. Kukan also wrote a statement in which he explains that on July 30, 2023, Plaintiff harassed Mr. Kukan for his t-shirt, and stated that "if you want to meet after work, I am them [sic] kinda guys [sic]." ECF No. 1-4 at 11. Additionally, Mr. Kukan wrote that Plaintiff kept coming by during the night shift to call Mr. Kukan a "prison bitch." *Id.* Mr. Kukan also wrote that Plaintiff had been "doing the name calling the week before [he] wore the shirt." ECF No. 1-4 at 5, 11. These incidents were further corroborated by the report written by Mr. Riordan and attached to Plaintiff's Complaint. ECF No. 1-4 at 12.

---

[2]   "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)).

[3]   There are some discrepancies between the dates listed in Plaintiff's Complaint and those listed in the attached witness statements. Regardless, the Complaint and the witness statements all seem to stem from incidents during two separate overnight work shifts on or about July 30, July 31, and August 1, 2023.

On August 2, 2023, at approximately 6:36 a.m., Defendant Riordan called Plaintiff on his mobile phone to conduct an investigatory interview. Defendant Riordan, Defendant Mansfield, Plaintiff, and Plaintiff's UAW "committee person representative," Stephen Miller, participated. Plaintiff alleges that during the interview, Defendant Riordan terminated Plaintiff's employment from TVS. Plaintiff further alleges that Defendant Riordan violated the CBA. Section 4 of the CBA, which Plaintiff attached to his Complaint, states that "[a]n employee who, for the purpose of being interviewed concerning potential discipline, is called to the plant or to an office, will be advised that they may request the presence of their Committee person to attend such interview. ECF No. 1-4 at 8. Plaintiff alleges that by terminating him, Defendant Riordan demonstrated "deliberate indifference" to Plaintiff Marin's religious rights as a Christian and retaliated against Plaintiff for a previously resolved legal issue[4] regarding his prior termination from TVS. ECF No. 1 at 17.

Plaintiff alleges that Defendant Diane Francis, the TVS human resources administrator, "oversees and approves all of Defendant Riordan's work-related actions, and that also all work policy and [CBA] in TVS are obeid [sic], also dismissed the other Defendant's written witness statements that demonstrated that the religious discrimination and harassment did occur against Plaintiff . . . , with deliberate indifference towards Plaintiff's religious rights as a Christian." *Id.* Plaintiff further alleges that Defendant David Black, TVS's chief operations officer, "reports all TVS third shift work activity and incidents to, also dismissed the other Defendant's written witness statements that demonstrated that the religious discrimination and harassment did occur

---

[4] Plaintiff provides scant details regarding this dispute, only stating that he had returned to work at TVS after an absence "due to a false accusation from the year prior that [Plaintiff] proved false, by demonstrating due process violations by TVS staff and management[.]" ECF No. 1 at 5.

4

against Plaintiff . . . , with deliberate indifference towards Plaintiff's religious rights as a Christian." *Id.* at 18.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 10, 2024. ECF No. 1 at 3. On April 11, 2024, the EEOC issued a right to sue letter to Plaintiff, which he has attached to his Complaint. ECF No. 1-10.

<u>The Complaint</u>

Plaintiff filed his Complaint on June 28, 2024. ECF No. 1. The Court interprets Plaintiff's Complaint as raising religious discrimination in employment, harassment/hostile work environment, and retaliation claims under Title VII against all Defendants.

<u>Defendants' Motion to Dismiss</u>

On August 29, 2024, Defendants filed their Motion to Dismiss and an accompanying Memorandum in Support. ECF Nos. 18 and 19. Defendants argue that all of Plaintiff's claims against all Defendants should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants further argue that Plaintiff's Complaint and the attached exhibits undermine his ability to state plausible religious discrimination, religious harassment, and retaliation claims. For this reason, Defendants assert that Plaintiff's claim should be dismissed with prejudice because any attempt to amend the Complaint would be futile.

Defendants specifically argue that Defendants Riordan, Mansfield, Francis, and Black, as sued in their individual capacity, are not proper Defendants because only employers can be held liable for violations of Title VII and these Defendants are not employers as defined by the statute.

Defendants further argue that Plaintiff admits facts in his Complaint that fatally undermine his ability to state plausible religious discrimination, religious harassment, and

5

retaliation claims. First, Defendants contend that Plaintiff's Complaint fails to establish a plausible prima facie case of religious discrimination because it fails to show that (1) Plaintiff met his employer's legitimate expectations, and (2) the circumstances gave rise to an inference of discrimination. Defendants also argue that Plaintiff's admission of a lawful plausible alternative reason for his termination renders his claim implausible and incapable of amendment. Defendants argue that Plaintiff failed to allege that he was performing his job to the legitimate expectations of TVS because he admitted that he engaged in the assertive confrontations with his co-workers. Defendants further argue that the circumstances did not give rise to an inference of discrimination because Plaintiff failed to name any similarly situated comparators. Defendants specifically contend that Plaintiff failed to state whether Kukan and Brooks, who may or may not be Christian, engaged in the same kind of behavior to which Plaintiff admits and were not disciplined as Plaintiff was.

Second, Defendants allege that Plaintiff's Complaint fails to establish a plausible prima facie case of religious harassment because it fails to establish that (1) a causal nexus exists between the harassment and the group status, and (2) the harassment affected a term, condition, or privilege of employment. Defendants argue that a causal nexus requires Plaintiff to allege facts supporting a plausible inference that his Christianity was the but-for cause of the alleged harassing conduct and Plaintiff has failed to do so. Specifically, Defendants suggest that Plaintiff fails to allege that Mr. Kukan's or Ms. Brooks's actions were motivated by anti-religious or anti-Christian sentiment.

Additionally, Defendants argue that, as a matter of law, Title VII does not require an employer to ban the religious expression of co-workers from the workplace. Defendants argue that, contrary to Plaintiff's allegations, TVS went above and beyond what an employer is

6

required to do as a matter of law when it told Mr. Kukan to cover his t-shirt and notified all employees not to wear potentially offensive clothing. Defendants also contend that, regardless, Mr. Kukan's t-shirt was simply not directed at Plaintiff and thus cannot plausibly be discriminatory. Defendants argue that because Plaintiff's allegations undermine his ability to present a plausible religious harassment claim, the Court should dismiss it with prejudice.

Finally, Defendants argue that Plaintiff's Complaint fatally undermines his ability to state a plausible retaliation claim because Plaintiff failed to allege that the adverse action was causally linked to a protected activity. Defendants attest that discrimination and retaliation claims fail if a plaintiff admits that the reason for his termination was something other than plaintiff's status as a member of a protected class. Defendants argue that the investigative summary attached to the Complaint directly notes that he was suspended because he approached Mr. Kukan in a threatening manner. Defendants conclude that this non-discriminatory reason for Plaintiff's termination dooms any but-for causal connection between Plaintiff's status as a Christian and his termination. Defendants emphasize that Plaintiff has failed to deny that he approached Mr. Kukan in a threatening manner.

In response, Plaintiff reiterates several arguments from his original Complaint. He now contends that Defendants Riordan, Black, Mansfield, and Francis violated the CBA.[5] Plaintiff argues, with citation to the recent Supreme Court decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), that he is not required to show that his alleged injury satisfies a significance test. ECF No. 20-1 at 3. Plaintiff does not connect the citation to *Muldrow* to the issues raised in the Motion to Dismiss. Plaintiff also cites to *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 519

---

[5] In his Response, Plaintiff attempts to raise new arguments and allegations regarding violations of his Fourteenth Amendment due process rights and various violations of the CBA. Because these new allegations were not part of Plaintiff's Complaint, they are not properly before the Court on the Motion to Dismiss, and the Court is not required to consider them.

7

(2002) for the contention that he is simply not required to plead the elements of a prima facie case in his employment discrimination claims to survive a motion to dismiss.  Ultimately, Plaintiff does not address Defendants' arguments that Plaintiff failed to state a claim upon which relief can be granted and that the Individual Defendants are improper Defendants but instead argues that he's not under an obligation to plead all elements of a prima facie case to survive the Motion to Dismiss.

In their Reply, Defendants argue that Plaintiff has abandoned his Title VII causes of action by offering no explanation or argument regarding the points they addressed in their Motion.  In addition, Defendants assert that Plaintiff's attempts to inject new causes of action via his Response are barred by law because it is well-established that a party cannot inject new causes of action through briefing that were not part of the allegations in his complaint.  Defendants further argue that, even if Plaintiff's this was construed as a motion to amend, Plaintiff's newly raised claims cannot succeed as Defendants are not state-actors and thus are not proper defendants for claims alleging constitutional due process violations.

**Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  A complaint must be dismissed for failure to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Pleadings must include sufficient factual information to provide notice of the grounds on which the claims rest and must "raise a right to relief above a speculative level." *Id.* at 555; *see also Schaff v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

8

at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (citation omitted).  When considering a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2).

## Discussion

As a preliminary matter, the Court finds that the Individual Defendants are improper Defendants in this Title VII action.  The only proper defendants in employment actions under Title VII are employers.  Title VII defines employers as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e(b).  Plaintiff merely alleges that the Individual Defendants are employees of TVS.  Without allegations that the Individual Defendants were his employer or agents of his employer, the Individual Defendants are not proper defendants in this action.  *See Carson v. Lacy*, 856 F. App'x 53, 54 (8th Cir. 2021) (finding that plaintiff's Title VII claims against individual supervisor was properly dismissed because individuals cannot be held liable under Title VII); *see also Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) ("[Title VII] does not provide for an action against an individual supervisor.").  Therefore, the Court will dismiss all claims against the Individual Defendants.

### *McDonnell Douglas* Burden Shifting Framework

Direct evidence of employment discrimination is rare, so most cases rely on circumstantial evidence.  In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the

9

burden shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination.  *Id.* at 802; *see also Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994).  If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  The defendant simply must provide some evidence of a non-discriminatory reason or reasons for its action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination.  *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1995).

Plaintiff would have the Court permit him to pursue his employment discrimination claims regardless of whether he has alleged sufficient facts that, when taken as true, would establish each element of his claims.  In support, Plaintiff cites to *Swierkiewicz*, 534 U.S. at 511, which states that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case."

In *Swierkiewicz*, the Supreme Court held that the Second Circuit's heightened pleading standard in employment discrimination cases conflicted with Fed. R. Civ. P. 8(a)(2), which favors a more liberal, notice pleading standard.  However, in *Twombly*, the Supreme Court clarified that "*Swierkiewicz* did not change the law of pleading but simply re-emphasized that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements."  550 U.S. at 570  (cleaned up).  The Court further clarified that the *Twombly* ruling "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.*

10

Here, the Court will therefore ensure that Plaintiff's Complaint meets the pleading requirements set out in *Twombly*. The Court does not read *Swierkiewicz* to suggest that Plaintiff has no burden to adequately plead the necessary elements of a prima facie case of discrimination.

<u>Plaintiff's Religious Discrimination Claim</u>

"To establish a prima facie case of religious discrimination, a plaintiff must show: (1) [he] is a member of a protected class because of [his] religious beliefs; (2) [he] met [his] employer's legitimate expectations; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). "Given that this prima facie model is an evidentiary, not a pleading standard, the complaint's allegations must only give plausible support to these elements." *Clobes v. 3M Co.*, 106 F.4th 803, 807 (8th Cir. 2024) (quoting *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024)). "Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner," *Shirrell*, 793 F.3d at 887, or "biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citations omitted).

Here—even liberally construing Plaintiff's allegations and taking all of his allegations as true—Plaintiff has failed to plausibly allege a prima facie case of religious discrimination. Specifically, Plaintiff fails to plausibly allege that he met his employer's legitimate expectations. Far from it. Plaintiff has incorporated evidence into his Complaint showing that he engaged in threating behavior towards his co-workers. Similarly, with regards to Ms. Brooks, Plaintiff alleges that after she rode by him and stated "freedom of speech," he pursued her to confront her over what he believed to be harassing behavior. Plaintiff makes no attempt to deny that he did

11

so. Threatening co-workers with whom he disagrees and aggressively confronting co-workers for allegedly harassing behavior cannot support an inference that Plaintiff was meeting his employer's expectations. Therefore, Plaintiff has not plausibly alleged that he met his employer's legitimate expectations in employment.

Similarly, taking these same facts as true, Plaintiff cannot plausibly allege that the circumstances give rise to an inference of discrimination. TVS appears to have had no anti-religious or anti-Christian motivation in terminating Plaintiff. Plaintiff had threatened Mr. Kukan after management had already directed Mr. Kukan to cover up his t-shirt based on Plaintiff's grievance. Plaintiff's allegations actually indicate that TVS and its management team attempted to accommodate Plaintiff by asking Mr. Kukan to cover his t-shirt. Yet instead of letting the issue lie after management's response, Plaintiff proceeded to threaten Mr. Kukan. When reports of these threats were brought to TVS's attention, TVS took steps to investigate the threatening behavior. When several witness statements indicated that Plaintiff had confronted Mr. Kukan, and Plaintiff failed to deny that he had done so, TVS terminated Plaintiff's employment. Given these circumstances, Plaintiff cannot plausibly allege that the circumstances of his termination give rise to an inference of religious discrimination. For this reason, and because Plaintiff cannot plausibly allege that he met TVS's expectations of employment, Plaintiff's religious discrimination claim fails to state a claim and will be dismissed.

Plaintiff's Harassment/Hostile Work Environment Claim

"To establish a prima facie case of hostile work environment [under Title VII], a plaintiff must show: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should

12

have known of the harassment and failed to take proper action." *Clobes* 106 F.4th at 807 (cleaned up).

Defendants argue that Plaintiff fails to allege any facts that suggest that Mr. Kukan's t-shirt or Ms. Brooks' free speech advocacy were motivated by animus toward Plaintiff's Christian faith, and thus Plaintiff's harassment claim should be dismissed for failure to plead a causal nexus. Defendants contend that to properly establish a causal nexus between the harassment and his status as a Christian, Plaintiff must allege that his Christianity was the but-for cause of the alleged harassment. Defendants cite to the Eighth Circuit's recent decision in *Clobes* for support.

In *Clobes*, the Eighth Circuit affirmed the dismissal of the plaintiff's claims under Title VII and the Minnesota Human Rights Act asserting a hostile work environment against his employer for their COVID-19 vaccination policy. The Eighth Circuit found that the district court properly dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because the plaintiff's complaint failed to plausibly support the causal nexus element of his claim. *Clobes*, 106 F.4th at 807. The Eighth Circuit found that "nothing in [plaintiff]'s complaint attempts to connect 3M's motivation in enacting its vaccination policy to [plaintiff]'s Christianity." *Id.* Rather, the Court found that the plaintiff's allegations supported the district court's finding that "3M implemented a neutral policy unconnected to [plaintiff]'s Christianity," and found that nothing in the complaint suggested that plaintiff's Christianity was the but-for cause of 3M enacting its vaccination policy. The Eighth Circuit emphasized that the plaintiff's allegations supporting a connection between the plaintiff's reservations about the vaccine to his religious beliefs had no connection to 3M's motivations and could not support an allegation of a causal nexus.

13

Here, Plaintiff has similarly failed to allege that his Christian faith was the but-for cause of the alleged harassing behavior. Ms. Brook's allegedly harassing behavior—yelling "free speech" at Plaintiff—has no plausible connection to Plaintiff's religious faith but instead appears to be the result of TVS management's instructions to its employees that they refrain for wearing potentially offensive clothing to work. Similarly, Mr. Kukan wearing a shirt with an inverted cross to work—without any specific allegation or reasonable inference that he did so to specifically target Plaintiff for his Christian faith—is not plausibly connected to Plaintiff's Christian faith. Instead, much like in *Clobes*, Plaintiff here has merely asserted that he felt that the t-shirt was offensive to his Christian faith and that Ms. Brook's advocacy for free speech was incorrect. Plaintiff has made no allegations connecting Ms. Brook's and Mr. Kukan's motivations to his Christianity. Because Plaintiff has failed to plausibly allege a causal nexus between his Christian faith and the allegedly harassing behavior, the Court will dismiss Plaintiff's harassment/hostile work environment claim for failure to state a claim.

Plaintiff's Title VII Retaliation Claim

"To establish retaliation under . . . Title VII . . . , a plaintiff must prove (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action." *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023). Defendants argue that Plaintiff's allegations undermine his ability to plausibly allege the third element of his retaliation claim. Specifically, Defendants assert that Plaintiff's allegations instead show that the but-for cause of his termination was his threatening confrontations with his co-workers and was in no way connected to Plaintiff's religious beliefs.

14

Plaintiff has failed to plausibly allege that his Christian faith or any activity connected to his religion was the but-for cause of his termination. Attached to Plaintiff's Complaint was a report written by a supervisor indicating that Plaintiff was suspended because he approached Mr. Kukan in a threatening manner. Several witness statements corroborated that Plaintiff confronted Mr. Kukan in a threatening manner. Threatening a co-worker is not a protected activity related to Plaintiff's Christian faith. Therefore, Plaintiff cannot plausibly allege the but-for cause of his termination was the exercise of a protected activity. Plaintiff's claim of retaliation will thus be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

<u>Dismissal Without Prejudice</u>

At this time, it is not appropriate to dismiss Plaintiff's claims with prejudice. Though it appears doubtful that Plaintiff can maintain a claim, the Court cannot say, as a matter of law, that Plaintiff is incapable of amending his Complaint to raise cognizable Title VII claims. The Court will therefore dismiss Plaintiff's claims without prejudice.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED**. ECF No. 18. All of Plaintiff's claim against all Defendants are **DISMISSED without prejudice** under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is **DISMISSED as moot**. ECF No. 22.

A separate Order of Dismissal shall accompany this Order.

Dated this 19th day of November, 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE=

15